IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| NORTH TEXAS NATURAL SELECT MATERIAL, LLC | § §  §  CIVIL ACTION NO. 4:24-CV-00717-AGD |
| v. | § § |
| CITY OF DENISON, TEXAS, ET AL. | |

### MEMORANDUM OPINION & ORDER

Pending before the court is Defendants City of Denison, Texas (the "City") and Ronnie Bates' Motion to Dismiss and Brief in Support (Dkt. #10). Having considered the Motion, Plaintiff North Texas Natural Select Material, LLC's Response (Dkt. #26), Defendants' Reply (Dkt. #31), and all other relevant filings, the court finds that Defendants' Motion should be granted in part and denied in part. The court further orders that this case should be remanded to the 59th Judicial District Court, Grayson County, Texas for lack of subject-matter jurisdiction.

### BACKGROUND

*Factual History*

Plaintiff is a supplier of sand and select fill in the Dallas/Fort Worth, Texas area (Dkt. #5 at p. 2). In January 2022, Plaintiff purchased approximately 146 acres of real property and facilities in Denison, Texas (the "Property") in order to provide material for developments in Grayson County, Texas (Dkt. #5 at p. 2). The Property is located within the extraterritorial jurisdiction of Denison (Dkt. #5 at p. 3).

Since February 2022, Plaintiff and its customers have used the same route for access to and transport of materials from the Property: driving north on Fannin Street to Spur 503 (Eisenhower Parkway) then west to U.S. 75 (and the reverse when traveling to the Property) (the

"Route"). Fannin Street is a north/south public road that abuts the east boundary of the Property (Dkt. #5 at p. 4).

Plaintiff alleges that on April 8, 2024, the City installed "No Trucks" signs at two points on the Route pursuant to City of Denison Ordinance § 25-19 (the "Ordinance") without notice to Plaintiff (Dkt. #5 at p. 6). The Ordinance prohibits commercial trucks weighing over 18,000 pounds from travelling on streets not designated as truck routes (Dkt. #5 at p. 8). On April 12, 2024, the City police began giving warnings to commercial trucks on the Route (Dkt. #5 at p. 6). The City subsequently began ticketing commercial trucks on the Route (Dkt. #5 at p. 6).

### *Procedural History*

On July 29, 2024, Plaintiff filed suit against Defendants and requested injunctive relief in the 59th Judicial District Court of Grayson County, Texas, alleging that the City's road restrictions are the "producing cause" of Plaintiff's damages (Dkt. #5 at p. 9). Plaintiff's Application for Injunctive Relief was set for a hearing on August 13, 2024 (Dkt. #1, Exhibit 8). On August 12, 2024, Defendants removed the case to the Eastern District of Texas, Sherman Division (Dkt. #1) alleging federal question jurisdiction. On September 6, 2024, Plaintiff filed its first Amended Complaint, alleging nine causes of action against Defendants as follows:

1. Claim for Recission of Governmental Action Pursuant to the Private Real Property Rights Preservation Act, Tex. Gov. Code § 2007.001–043, seeking an injunction and monetary damages.
2. Claim for Declaratory Judgment that the "No Trucks" signs and enforcement of the same conflicts with City Ordinance Section 25-19.
3. Claim for Declaratory Judgment that the "No Trucks" signs and enforcement of the same violates Texas Civil Practice and Remedies Code § 37.004, Texas Natural Resource Code § 81.0523, and the Texas Constitution, art. XI, § 5
4. Claim for Declaratory Judgment that the "No Trucks" signs and enforcement of the same violates federal law under 49 U.S.C. § 31114(a) and 23 C.F.R. § 658.19.
5. Claim for Declaratory Judgment and *Ultra Vires* Action against Defendant Ronnie Bates.
6. Nuisance.
7. Substantial Impairment.

8. Inverse Condemnation under the Texas Constitution and the 5th Amendment of the United States Constitution.
9. Request for Preliminary and Permanent Injunctive Relief.

On September 26, 2024, Plaintiff filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Preliminary Injunction Hearing (Dkt. #8) which is fully briefed. On September 26 and 27, 2024, the Parties consented to proceed before a United States Magistrate Judge (Dkt. #9; Dkt. #11). On October 1, 2024, the District Judge referred this matter to the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. Section 636(c) (Dkt. #16).

On September 26, 2024, Defendants filed a Motion to Dismiss (Dkt. #10), which is presently before the court. On October 10, 2024, the court acknowledged that while there is a Motion for Temporary Restraining Order before the court, (Dkt. #8), Defendants alleged that the court lacks subject-matter jurisdiction (Dkt. #23). Accordingly, the court ordered Plaintiff to advise the court whether it intended to dismiss its federal claims (Court Four, Count Eight) to allow litigation to proceed in state court (Dkt. #23). In response to the court's Order, Plaintiff filed a Notice Regarding Federal Claims, stating that "Plaintiff does not intend to drop its federal claim or seek to have this case remanded to proceed in state court." (Dkt. #24). On October 17, 2024, Plaintiff filed a Response to the Motion (Dkt. #26). On October 28, 2024, Defendants filed a Reply (Dkt. #31).

## LEGAL STANDARD

### *Federal Rule of Civil Procedure 12(b)(1)*

A party may challenge the court's jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(1). Subject matter jurisdiction in a federal court can be established in two ways: federal question or diversity. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction includes

"all civil actions arising under the constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction is established when the amount in controversy exceeds $75,000.00 and the matter is between "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332.[1]

The court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

***Federal Rule of Civil Procedure 12(b)(6)***

"To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A court generally may not "go outside the complaint" in considering a Rule 12(b)(6) motion but may consider "the complaint, any documents attached to

---

[1] No Party alleges that the court has jurisdiction via diversity.

[2] To assess the sufficiency of a complaint, the court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

## ANALYSIS

Here, the court finds that Defendants properly removed this matter from state court based on federal question jurisdiction. Additionally, the court finds that the *Younger* abstention doctrine does not bar Plaintiff's claims in federal court. Even so, Plaintiff has failed to state a claim for relief arising under federal law and the court thus dismisses those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the court is dismissing Plaintiff's federal causes of action, and because the remainder of Plaintiff's causes of action are distinctly matters of state law, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. This case will thus be remanded to the 59th Judicial District Court, Grayson County, Texas.

***The court had federal question jurisdiction at the time of removal.***

Section 1441(a) allows for the removal of "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). As is relevant here, federal question jurisdiction exists when a case or controversy arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

Here, as alleged by Defendants in their Notice of Removal, (Dkt. #1), Plaintiff asserts that Defendants' actions are preempted by 49 U.S.C. 31114(a) and 23 C.F.R. § 658.19 (Dkt. #1, Exhibit

5

7 at p. 18). Plaintiff further alleges that Defendants' actions constitute an uncompensated taking under the Fifth Amendment to the United States Constitution (Dkt. #1, Exhibit 7 at p. 21). Thus, because Plaintiff plead a federal question on the face of its Petition, the court had jurisdiction at the time of removal.

### *The* Younger *abstention doctrine does not bar Plaintiff's claims.*

In its Motion, Defendants argue that the court should dismiss Plaintiff's claims for declaratory and injunctive relief for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) pursuant to the *Younger* abstention doctrine (Dkt. #10 at p. 4). Defendants argue that any grant of injunctive or declaratory relief by this court would interfere with ongoing state judicial proceedings, namely the citations issued to the truck drivers (Dkt. #10 at p. 4). In Response, Plaintiff argues the *Younger* abstention is inapplicable because it alleges that the "traffic citations issued to the individual truck drivers. . .are peripheral to the core issue—[Plaintiff's] challenge to the City of Denison's unlawful closure of a public roadway to commercial truck traffic." (Dkt. #26 at p. 5).

"Under the *Younger* abstention doctrine, 'federal courts must[ ]refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted.'" *Thomas v. State*, 294 F. Supp. 3d 576, 593 (N.D. Tex. Feb. 13, 2018), *report and recommendation adopted*, 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018), *appeal dismissed*, 18-10448, 2018 WL 4943750 (5th Cir. 2018) (citing *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing cases)); *Wightman–Cervantes v. Tex.*, No. 3:03-CV-3025-D, 2004 WL 2512208, at *2 (N.D. Tex. Nov. 5, 2004) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971))). Relevant here, "[t]he *Younger* abstention doctrine does not apply to claims for monetary relief." *Id*. (citing *Saloom v. Tex. Dept.*

*of Family & Child Protective Serv*s., 578 F. App'x 426, 429 (5th Cir. 2014)). "Three conditions must be met for the doctrine to apply: (1) the dispute must involve an ongoing state judicial proceeding; (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges." *Id*. at 593–94 (citations omitted and internal quotation marks omitted). The Supreme Court has emphasized that abstention under *Younger* is "exceptional." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citations and internal quotation marks omitted).

The court finds that *Younger* is not applicable to the facts presented here. As a threshold matter, *Younger* does not apply to Counts Six through Eight of the Amended Complaint because Plaintiff only seeks monetary relief under those causes of action (Dkt. #5 at pp. 18–20). *Younger* also does not apply to Plaintiff's requests for injunctive and declaratory relief because the *Younger* factors are not met.

As to the first factor, the gravamen of Plaintiff's Amended Complaint is the alleged damage to Plaintiff's business operations, not the citations issued to truck drivers. Moreover, no party to this case is a party to the underlying citations issued to truck drivers. It thus strains credulity to argue that the dispute between the parties in this case *involves* an "ongoing state judicial proceeding." Accordingly, the first element of the *Younger* abstention doctrine is not met.

Second, the City has significant interest in regulating its roadways and enforcing its laws. Even so, as established, *supra*, the proceedings against the truck drivers are ancillary to the dispute between the parties at issue in this case. Accordingly, the second element of the *Younger* abstention doctrine is not met.

Finally, the third element of *Younger* is not met. The municipal proceedings pending against the truck drivers offer no opportunity for Plaintiff to bring its constitutional challenge

against Defendants because Plaintiff is not a party to the municipal proceedings. *See Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 629 (5th Cir. 2023), cert. denied, 144 S. Ct. 548, 217 L. Ed. 2d 292 (2024) ("All that *Younger* and its progeny mandate, however, is an opportunity to raise federal claims in the course of state proceedings. Texas law expressly provides mechanisms for challenging excessive bail."); *Hawkins v. Sanders*, No. CV 19-13323, 2023 WL 2541943, at *7 (E.D. La. Mar. 16, 2023) ("The relevant inquiry for the third factor in the *Younger* abstention doctrine is whether claimants can pursue their claims 'in the ongoing state proceedings,' not whether they can bring a separate state action."). Because the *Younger* abstention doctrine does not apply, the court thus proceeds to Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

***Plaintiff has failed to state a claim for relief arising under federal law.***

The court finds that Plaintiff did not state a claim for relief under federal law in Count Four or Count Eight of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Count Four**

In its Amended Complaint, Plaintiff asks the court to declare that the City's placement of "No Trucks" signs and enforcement of the designation of Fannin Street as a "No Trucks" route are in violation of and preempted by federal laws 49 U.S.C. § 31114(a) and 23 C.F.R. § 658.19 (Dkt. #5 at p. 17). Defendants argue that Plaintiff did not state a claim for relief under Rule 12(b)(6) because Plaintiff's claim is "conclusory." (Dkt. #10 at p. 20). Defendants further argue that the trucks at issue are not "STAA trucks" to which § 31114 applies, thus precluding applicability of both § 31114 and § 658.19 which applies to trucks with dimensions authorized by the STAA (Dkt.

---

[3] Defendants also assert that Plaintiff lacks prudential standing under Federal Rule of Civil Procedure 12(b)(6). Since the court concludes that Plaintiff failed to state a claim for relief under federal law, the court need not reach this issue.

#10 at p. 20). In Response, Plaintiff argues that the trucks on the Route qualify as "commercial motor vehicles" under § 31101(1)(A).

Plaintiff has not stated a claim for relief in Count Four. First, Plaintiff's argument in Count Four is barebones, and includes no facts supporting its conclusion that the "No trucks" signs are preempted by and in violation of federal law (Dkt. #5 at pp. 16–17). Therefore, Plaintiff has not stated a claim for relief under § 31114(a) and § 658.19. *Iqbal*, 556 U.S. at 681.

In any event, even if Plaintiff had plead sufficient facts, as Defendants point out, § 31114(a) and § 658.19 do not apply to Plaintiff's operations.[4] Those provisions apply to "terminals and facilities for food, fuel, repairs, and rest" as well as "points of loading and unloading to household goods carriers, motor carriers of passengers, and any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28 feet. . ." 23 C.F.R. § 658.19(a); 49 U.S.C. § 31114(a). However, according to the report of James B. Knight, P.E. attached to Plaintiff's Amended Complaint, the third-party trucks at issue are 15-foot semi-trucks towing approximately 60-foot trailers (Dkt. #26, Exhibit 1 at pp. 12–14). It thus appears that the trucks at issue exceed 28 feet and do not fall within § 658.19(a) or § 31114(a). Further, Plaintiff describes its operations as a "sand pit" (Dkt. #5 at p. 2), which is not a terminal or facility "for food, fuel, repairs, [or] rest." 23 C.F.R. § 658.19(a); 49 U.S.C. § 31114(a). Therefore, Plaintiff has not stated a claim for relief under 23 C.F.R. § 658.19 or 49 U.S.C. § 31114(a).

**Count Eight**

In Count Eight of its Amended Complaint, Plaintiff alleges that "Defendants' actions constitute a taking, damaging, and/or destroying of Plaintiff's property rights for, or application

---

[4] Plaintiff did not respond to this argument. *See* Local Rule CV-7(d) (stating that a party's "failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion").

to, public use without adequate compensation having been made. Accordingly, such actions are in violation of Article I, Section 17 of the Constitution of Texas and the 5th Amendment to the United States Constitution." (Dkt. #5 at p. 19). Plaintiff further alleges that "Defendants have physically occupied portions of the Property without consent, taken Plaintiff's property rights with intent to deprive Plaintiff of use of the property rights, substantially impaired access to the Property, or deprived Plaintiff of their reasonable investment backed expectations[.]" (Dkt. #5 at p. 19). Defendants argue that the Fifth Amendment does not require compensation for consequential damages, including damages to a plaintiff's business (Dkt. #10 at p. 27). In response, Plaintiff argues that "the facts here clearly demonstrate a total denial of access." (Dkt. #26 at p. 17).

For Fifth Amendment purposes, there are "two categories of regulatory action that generally will be deemed *per se* takings." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). "First, where government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." *Id.* (citation omitted). "A second categorical rule applies to regulations that completely deprive an owner of 'all economically beneficial us[e]' of her property." *Id.* at 539 ("[T]he complete elimination of a property's value is the determinative factor.") (citation omitted); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992) ("[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking.") (emphasis in original).

Here, Plaintiff does not allege facts that fall into the two categories of *per se* takings. While Plaintiff states in Count Eight that "Defendants have physically occupied portions of the Property without consent," Plaintiff's Amended Complaint is otherwise devoid of facts alleging a physical occupation. *See* (Dkt. #5). As to the second category, Plaintiff has also not alleged facts

demonstrating that Defendants' conduct deprives it of "all economically beneficial use" of the Property. In its Amended Complaint, Plaintiff alleges that it "receives the bulk of its business from companies purchasing materials mined from its Property for construction projects. As addressed in more detail below, the City's road restrictions are the producing cause of [Plaintiff's] damages and reduced daily load count." (Dkt. #5 at p. 9). However, under these facts, Plaintiff has alleged damage to its business because of a reduction in "daily load count," not that Defendants' conduct deprives it of "all economically beneficial use" of the Property. Moreover, while Plaintiff asserts that any alternate route will subject the public to "increased safety concerns" and that "[s]everal of the alternatives are not even physically passable by commercial vehicles," Plaintiff does not deny that there are alternate routes to the Property or that non-commercial vehicles can access the Property via the Route (Dkt. #5 at p. 10). Accordingly, Plaintiff has not stated a claim for a *per se* taking under the Fifth Amendment.

Outside of the two "relatively narrow categories[,]. . . regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)." *Lingle*, 544 U.S. at 538; *DM Arbor Ct., Ltd. v. City of Houston, Texas*, 622 F. Supp. 3d 426, 451 (S.D. Tex. 2022) ("'[W]here an owner is denied only some economically viable uses, a taking still may have occurred' under *Penn Central*, but not under *Lucas*."). Under *Penn Central*, courts analyzing a partial regulatory taking should consider: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Lingle*, 544 U.S. at 538–39. A review of these factors demonstrates that Plaintiff has not stated a takings claim under *Penn Central*.

With respect to the first factor, "[t]o assess a regulation's economic impact, courts in the Fifth Circuit 'compare the value that has been taken from the property with the value that remains in the property.'" *DM Arbor Ct., Ltd.*, 622 F. Supp. 3d at 454 (quoting *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th Cir. 2016)). Here, Plaintiff does not allege facts sufficient to allow the court to assess the alleged economic impact of Defendants' actions. Even if Plaintiff had alleged the relative value of the Property or the business, it does not appear that the alleged taking is "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539; *see, e.g.*, *CCA Assocs. v. United States*, 667 F.3d 1239, 1246 (Fed. Cir. 2011) (explaining that it is aware of no case finding a taking where the diminution in value is under 50 percent); *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 696 (4th Cir. 2018) (finding no taking occurred when there was a 83% reduction in value); *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (finding no taking occurred when there was a 81% reduction in value); *DM Arbor Ct., Ltd.*, 681 F. Supp. 3d 713, 743 (S.D. Tex. 2023) (collecting cases with diminution of up to 92.5% not constituting a *Penn Central* taking). As such, the first *Penn Central* factor weighs against Plaintiff's takings claim.

As to the second factor, "investment-backed expectations refer to the regulatory environment at the time of the acquisition of the property." *MC Trilogy Texas, LLC v. City of Heath, Texas*, No. 3:22-CV-2154-D, 2023 WL 5918925, at *5 (N.D. Tex. Sept. 11, 2023) (citation and internal quotation marks omitted). Accordingly, "investment-backed expectations 'limit[] takings recoveries to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime.'" *DM Arbor Ct., Ltd.*, 622 F. Supp. 3d at 456 (quoting *Loveladies Harbor v. United States*, 28 F.3d 1171, 1177 (Fed. Cir.

1994), abrogated on other grounds by *Bass Enterprises Prod. Co. v. United States*, 381 F.3d 1360, 1369–70 (Fed. Cir. 2004)). Here, Ordinance 25-19 has been in place since the 1960s. Code of Ordinances, City of Denison, Texas, Code 1965 § 25-19. Plaintiff purchased the Property in January 2022 (Dkt. #5 at p. 2). A such, the "regulatory environment" at the time Plaintiff purchased the Property included Ordinance 25-19. And as Defendants correctly point out, Plaintiff alleges no facts that it was acting on some sort of reliance that Defendants would not enforce the ordinance. As such, the second *Penn Central* factor weighs against Plaintiff's takings claim.

Finally, as to the third factor, "[t]he 'character' of the governmental action refers to the type of regulation at the heart of the underlying takings claim." *MC Trilogy Texas, LLC*, 2023 WL 5918925 at *5 (N.D. Tex. Sept. 11, 2023). "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co.*, 438 U.S. at 124 (citation omitted). In other words, "[w]hen the government 'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole,' that denotes a taking." *DM Arbor Ct., Ltd.*, 622 F. Supp. 3d at 457 (quoting *Lingle*, 544 U.S. at 539). "To that end, 'government action that singles out a landowner from similarly situated landowners raises the specter of a taking.'" *Id.*

Here, the nature of the governmental action is Defendants' enforcement of municipal traffic laws. While the enforcement of the ordinances allegedly impacts Plaintiff's business, Plaintiff does not allege that it was singled out or otherwise treated differently than "similarly situated landowners." *DM Arbor Ct., Ltd,*, 622 F. Supp. 3d at 457. Moreover, while Plaintiff does not attempt to categorize the nature of Defendants' actions, the ordinance prohibits trucks over 18,000

13

pounds from traveling on those roadways not designated by the City for such traffic (Dkt. #5 at p. 6). Defendants' conduct thus appears to be a "public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co.*, 438 U.S. at 124. Therefore, the third *Penn Central* factor weighs against Plaintiff's takings claim.

Because Plaintiff has not stated a claim for a *per se* taking or plead facts supporting any of the *Penn Central* factors, Plaintiff has not stated a takings claim under the Fifth Amendment.

***The court declines to exercise supplemental jurisdiction.***

Having determined that Plaintiff has not stated a federal claim for relief, the court must now determine whether to exercise supplemental jurisdiction over Plaintiff's state law claims. "The district courts may decline to exercise supplemental jurisdiction. . .if the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Plaintiff's remaining causes of action reference numerous local statutes and ordinances and raise matters solely within the purview of Texas law (Dkt #5). Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. The court thus lacks jurisdiction and orders that this case be remanded to the 59th Judicial District Court, Grayson County, Texas.

## CONCLUSION

It is therefore **ORDERED** that Defendants City of Denison, Texas and Ronnie Bates' Motion to Dismiss and Brief in Support (Dkt. #10) is **GRANTED in part and DENIED in part**. Count Four and Count Eight of Plaintiff's Amended Complaint are **DISMISSED WITHOUT PREJUDICE.** It is further **ORDERED** that this case be immediately remanded to the 59th Judicial District Court, Grayson County, Texas.

**IT IS SO ORDERED.**

**SIGNED this 31st day of October, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE

15